# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

DHP HOLDINGS II CORPORATION, et al.,

        Debtor.

--------------------------------------------------------

JOHN MANNING and TONY QUESENBERRY
on their own behalf and on behalf of all other
persons similarly situated,

        Plaintiffs,

      v.

DHP HOLDINGS II CORPORATION a/k/a,
DESA (CAYMAN) HOLDING, LLC, DESA
(CAYMAN) II HOLDING, LLC, DESA, LLC,
DESA HEATING, LLC, DESA SPECIALTY,
LLC, DESA FMI, LLC, DESA IP, LLC, DESA,
LLC, and HIG CAPITAL, LLC,

        Defendants.

Chapter 11

Case No. 08-13422 (MFW)
(Jointly Administered)

Adv. Pro. No. 09-50023 (MFW)

## H.I.G. CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE SINGLE EMPLOYER ISSUE

Date: May 10, 2010

Dennis A. Meloro (#4435)
1007 North Orange Street, Ste. 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
melorod@gtlaw.com

Joseph P. Davis III (BBO# 551111)
Jeffrey M. Burns (BBO# 661448)
One International Place
Boston, MA 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
davisjo@gtlaw.com
burnsj@gtlaw.com
Admitted *Pro Hac Vice*

*Counsel for H.I.G. Capital, LLC*

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..............1

SUMMARY OF ARGUMENT ...................................................................3

CONCISE STATEMENT OF MATERIAL, UNDISPUTED FACTS........................ 5

A. The Relationship Between H.I.G. Capital, LLC and Desa. ......................5

B. The Relationship Between Desa and its Senior Lenders and Desa's Efforts
to Sell its European Division. ..................................................................8

C. The Senior Lenders, Not H.I.G., Swept Desa's Cash, Froze its Bank
Accounts and Caused Desa to Engage in Drastic Restructuring Measures. ...........9

D. At The Demand of the Senior Lenders, Not H.I.G. or the Board Members,
Desa's Senior Managers Interviewed Restructuring Firms and Retained
Craig Dean of AEG Partners, Who Took Control of Desa. ......................9

E. Mr. Dean and Desa's Senior Managers, Not H.I.G. or the Board Members,
Distributed the WARN Act Notices and Implemented the Layoffs. ..................11

ARGUMENT ...................................................................................13

A. The Rule 56 Summary Judgment Standard. ...........................................14

B. The WARN Act Applies Only To "Employers." ....................................15

C. H.I.G. And Desa Did Not Constitute Plaintiffs' "Single Employer" And
Therefore H.I.G. Cannot Not Be Held Liable for Desa's Alleged WARN
Act Violations. . ...................................................................................17

1. Under The Five Factor Balancing Test Developed By the DOL and
Applied by the Third Circuit, Plaintiffs Must Establish That H.I.G.
And Desa Failed To Function At Arm's Length As Separate
Entities. ...................................................................................17

2. Under the DOL's Five Factor Test, H.I.G. And Desa Were Not A
Single Employer. ......................................................................18

i. H.I.G. Did Not Exercise De Facto Control of Desa. ......................18

ii. H.I.G. and Desa Did Not Have Unified Personnel Policies...........20

iii. There Was No Dependency of Operations Between H.I.G.
and Desa. ...................................................................................21

iv.    Even if Plaintiffs Could Establish Common Ownership and Common Officers/Directors, Such a Showing is Insufficient to Establish Single Employer Status.............................23

**CONCLUSION** ....................................................................................................................27

*CHI 59,613,518v1*

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2205 (1986) .............................................................14

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548 (1986) .............................................................14

*Coppola v. Bear Stearns Co.,*
    2005 WL 2648033 (N.D.N.Y. Oct. 17, 2005) ..........................................18, 22

*In re APA Transport. Corp.,*
    541 F.3d 233 (3d Cir. 2008) .................................................................. passim

*Pa. Coal Ass'n v. Babbit,*
    63 F.3d 231 (3d Cir. 1995) ...........................................................................14

*Pearson v. Component Tech. Corp.,*
    247 F.3d 471 (3rd Cir. 2001) .................................................................. passim

*United States v. Bestfoods,*
    524 U.S. 51, 118 S.Ct. 1876 (1998) ..............................................................23

*Voght v. Greenmarine Holdings, LLC, et al.,*
    318 F. Supp. 2d 136 (S.D.N.Y. 2004) .....................................................18, 20

*White v. Brown,*
    2010 WL 1740717 (D. Del. Apr. 28, 2010) ...................................................14

**Federal Statutes**

29 U.S.C. § 2101 ................................................................................................1

29 U.S.C. § 2101(a)(1)(A) and (B) ...................................................................15

**Federal Regulations**

20 C.F.R. § 639.3(b) .........................................................................................15

20 C.F.R. § 639.3(c) .........................................................................................15

29 C.F.R. § 639.3(a)(2) .........................................................................3, 16, 18

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On December 29, 2008, DHP Holdings II Corporation, Desa, LLC, Desa Heating, LLC, Desa Specialty, LLC, Desa FMI, LLC and Desa IP, LLC (collectively, "Desa"), filed Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code. On January 13, 2009, Plaintiffs, John Manning and Tony Quesenberry (the "Plaintiffs"), commenced the instant adversary proceeding against Desa and H.I.G. Capital, LLC ("H.I.G."). D.I. 1. On February 17, 2009, Plaintiffs filed their First Amended Complaint. D.I. 6.

Plaintiffs assert that H.I.G. and Desa constituted a "single employer" under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), such that H.I.G. may be held liable for Desa's alleged WARN Act violations.

On March 13, 2009, H.I.G. filed its Answer to the First Amended Complaint. D.I. 18. On May 27, 2009, the Court approved a Stipulation between the Plaintiffs and Desa pursuant to which Plaintiffs have suspended indefinitely litigation of their claim against Desa. D.I. 26.

On December 23, 2009, Plaintiffs filed a Motion seeking leave to file a Second Amended Complaint. D.I. 42. Plaintiffs' Motion was granted on January 13, 2010 and they filed their Second Amended Complaint on January 15, 2010. D.I. 44 and 45. On January 29, 2010, H.I.G. filed its Answer to Plaintiffs' Second Amended Complaint. D.I. 62.

The parties agreed that the issue of whether H.I.G. and Desa constituted a "single employer" under the WARN Act should be bifurcated from the issues of class

-1-

certification, liability and damages. The parties submitted, and the Court approved, an Amended Pre-trial Scheduling Order that bifurcated discovery on the single employer issue, extended discovery on the single employer issue until March 26, 2010 and set a deadline of April 26, 2010 for dispositive motions on the single employer issue. D.I. 63 and 65. The parties subsequently agreed to, and the Court approved, further amendments to the Scheduled Order, including the extension of the discovery period on the single employer issue to April 9, 2010 and the extension of the deadline to file dispositive motions until May 10, 2010. D.I. 68 and 69.

With the discovery period on the single employer issue now closed, H.I.G. submits this memorandum of law in support of its motion for summary judgment. The evidence demonstrates that H.I.G. and Desa did not constitute a single employer and that H.I.G. cannot be held liable for any alleged WARN Act violations by Desa.

# SUMMARY OF ARGUMENT

1.      H.I.G. is not a "single employer" with Desa and hence has no liability under the WARN Act for the termination of Desa's workforce at or about the time of the filing of the instant Chapter 11 proceedings.  It is undisputed that none of Desa's employees were employed by H.I.G.  In order for any liability to attach to H.I.G., the Plaintiffs must first establish that Desa and H.I.G. functioned as a "single employer." The United States Court of Appeals for the Third Circuit has held that courts must apply a balancing test using five factors set forth in regulations promulgated by the United States Department of Labor (the "DOL") when determining whether two or more entities constitute a "single employer" for WARN Act purposes.

2.      The DOL regulations specifically state:

> Under existing legal rules, independent contractors and subsidiaries which are wholly owned or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent.  Some of the factors to be considered in making this determination are **(i) common ownership, (ii) common directors and/or officers, (iii)** *de facto* **exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.** (emphasis added)

29 C.F.R. § 639.3(a)(2).

3.      With discovery on the single employer issue now closed, it is clear that H.I.G. never engaged in the requisite type of conduct that would permit this Court to find that it was the Plaintiffs' employer for the purposes of the WARN Act.

4.      At all times relevant to this action, interactions between H.I.G. and Desa were at arm's length.  H.I.G. played no role in the day-to-day operations and management of Desa.  Each company had separate employees, separate personnel policies and compensation for rank-and-file employees, filed their taxes separately, used different

firms for their accounting, auditing and benefits administration needs, and never entered into any agreements for the sharing of administrative services, interchange of employees or comingling of funds.

5.     Of most significance, H.I.G. played *no role* in the critical actions at the center of this litigation, namely, the distribution of WARN Act notices and the layoffs of Desa's employees.

6.     Under these circumstances, as a matter of law, H.I.G. and Desa did not constitute a "single employer." H.I.G. cannot be held liable for any alleged violation of the WARN Act by Desa and thus the Plaintiffs' claim against H.I.G. should be dismissed.

## CONCISE STATEMENT OF MATERIAL, UNDISPUTED FACTS[1]

### A.     The Relationship Between H.I.G. Capital, LLC and Desa.

1.     Prior to the filing of the Debtors' bankruptcy petitions, Desa was a leading manufacturer, distributor and marketer of vent-free heating appliances, outdoor heaters, lawn and garden electrical products, and consumer fastening systems in the United States. It was headquartered in Bowling Green, Kentucky, and operated facilities in Kentucky, Alabama and California.  Declaration of Craig S. Dean, Chief Restructuring Officer of the Debtors, in Support of First Day Motions ("Dean Dec.") at ¶ 9 (**Exhibit D** to Burns Dec.). In 2008 its management team included Michael Briggs, Paul Lehman, Kathy Ford and Glenn Hines, none of whom was employed by H.I.G.  Stokes D. Tr. at p. 40 l. 10 - p. 41 l. 10, p. 91 l. 18 - 25.

2.     H.I.G. is a private investment firm headquartered in Miami, Florida. Stokes Dec. at ¶ 2.  Its only members and owners are Anthony Tamer and Sami Mnaymneh.  Tamer D. Tr. at p. 11 l. 24 - p. 12 l. 10.  During 2008, Charles Hanemann was a managing director of H.I.G. and Richard Stokes was an associate at H.I.G.  *Id.* at p. 104 l. 6 - 7.

3.     Certain investment funds managed by H.I.G. owned approximately seventy percent (70%) of DHP Acquisition Corp. ("DHP Acquisition"), which in turn owned 100% of DHP Holdings II Corporation ("DHP Holdings"), the parent company of Desa, LLC ("Desa, LLC").  Stokes Dec. at ¶ 3; Stokes D. Tr. at p. 12 l. 12 - 14, p. 17 l. 2 -

---

[1] The following facts are derived from the Declaration of Richard S. Stokes ("Stokes Dec."), certain pages from the deposition transcripts of Craig Dean ("Dean D. Tr."), Richard Stokes ("Stokes D. Tr.") and Anthony Tamer ("Tamer D. Tr."), and documents that have been produced in this litigation.  Specific documents cited in this Memorandum are attached to the Declaration of Jeffrey M. Burns ("Burns Dec,"), submitted contemporaneously herewith.  Portions of the deposition transcripts of Messrs. Dean, Stokes and Tamer cited herein may be found in **Exhibits A, B** and **C**, respectively, to the Burns Dec.

12; **Exhibit D** to Burns Dec. (at Exhibit A to Dean Dec.). Desa, LLC owned 100% of Desa Heating, LLC, Desa Specialty, LLC, Desa FMI, LLC and Desa IP, LLC. **Exhibit D** to Burns Dec. (at Exhibit A to Dean Dec.). Investment funds managed by Berggruen Holdings North America ("Berggruen") owned approximately thirty percent (30%) of DHP Acquisition. Stokes Dec. at ¶ 3. Berggruen is not affiliated in any manner with H.I.G. or the funds that H.I.G. manages. *Id.*

4.    The funds managed by H.I.G. and Berggruen also were parties to a subordinated credit agreement with Desa dated June 11, 2007 (the "Subordinated Credit Agreement"). **Exhibit E** to Burns Dec. (first page and signature pages of Subordinated Credit Agreement). Although the original loan amount under the Subordinated Credit Agreement was $10 million, in March 2008 the Subordinated Credit Agreement was amended and the loan was increased by $5 million. Stokes D. Tr. at p. 14 l. 22 - 24.

5.    In 2008 Messrs. Tamer, Mnaymneh, Hanemann, Stokes and Jared Bluestein (of Berggruen) constituted the Boards of Directors or Managers of each of the Desa entities (except for DHP Holdings). **Exhibit F** to the Burns Dec. While Mr. Stokes and Mr. Hanemann held officer positions in each Desa entity, Mr. Tamer and Mr. Mnaymneh were officers only of DHP Holdings *Id.*

6.    The H.I.G. representatives' duties were limited to providing oversight on key and material transactions that were outside the ordinary course of Desa's business and the experience of Desa's management, particularly merger and acquisition ("M&A") transactions and refinancing transactions. Stokes D. Tr. at p. 23 l. 4 - p. 24 l. 14.

7.    Mr. Stokes did not have authority to veto any actions taken by other officers of Desa. *Id.* at p. 22 l. 12 - 22. No H.I.G. employees were involved in the day-to-

-6-

day hiring, supervising, disciplining or terminating of Desa's employees. Stokes Dec. at ¶ 7; *see* Stokes D. Tr. at p. 129 l. 9 - 11.

8.      H.I.G. and Desa did not share common (i) employees, (ii) payroll systems, (iii) wage scales, (iv) employment policies (including handbooks and other policies concerning compensation, vacation and sick time), or (v) employee reporting structures. Stokes Dec. at ¶ 4.  H.I.G. was not involved in creating, formulating or implementing Desa's payroll system, wage scale for rank and file employees, employment policies and reporting structures. *Id.* at ¶ 5; *see* Stokes D. Tr. at p. 128 l. 11 - 16.

9.      To the extent that Desa was party to a collective bargaining agreement with a union, H.I.G. was not a signatory to that agreement, played no role in the negotiation or administration of such agreement and is not a signatory to any other collective bargaining agreement. Stokes Dec. at ¶ 6.

10.     There were no agreements between H.I.G. and Desa for the sharing of administrative purchasing services, interchange of employees or equipment, or comingling of finances, and in practice H.I.G. and Desa never shared any common facilities, equipment, materials, office supplies or anything of that nature. *Id.* at ¶ 8; Stokes D. Tr. at p. 145 l. 14 - 20; Tamer D. Tr. at p. 128 l. 14 - 22.

11.     H.I.G. and Desa did not share a joint bank account, and Desa reimbursed H.I.G. for out-of-pocket expenses that were incurred by H.I.G., such as travel expenses. Stokes D. Tr. at p. 25 l. 17 - 19, p. 100 l. 3 - 16, p. 145 l. 6 - 13; Tamer D. Tr. at p. 128 l. 10 - 13.  H.I.G. and Desa used different people and companies for their accounting, auditing and benefits administration needs, filed their tax returns separately and had their

own tax identification numbers.  Tamer D. Tr. at p. 126 l. 22 - p. 128 l. 9; Stokes Dec. at ¶ 9.

12.     While Mr. Tamer and Mr. Mnaymneh set H.I.G.'s personnel policies, the CEO of Desa, LLC was responsible for setting Desa's personnel policies.  Tamer D. Tr. at p. 122 l. 15 - 25.

**B.     The Relationship Between Desa and its Senior Lenders and Desa's Efforts to Sell its European Division.**

13.     Each of the Desa entities, except for DHP Holdings, was a party to a credit agreement dated December 6, 2004 (the "Senior Credit Agreement") with certain financial institutions (the "Senior Lenders") who were represented by an administrative agent (the "Administrative Agent").  **Exhibit D** to Burns Dec. at ¶ 26.  H.I.G. and the investment funds it manages were not part of the Senior Lenders, were not signatories to the Senior Credit Agreement and were not guarantors of Desa's obligations under the Senior Credit Agreement.  Stokes Dec. at ¶ 10.

14.     Desa and the Senior Lenders executed numerous amendments to the Senior Credit Agreement.  **Exhibit D** to Burns Dec. at ¶¶ 26-31.

15.     After a series of defaults by Desa, in March 2008, the Senior Lenders agreed with Desa that Desa would sell its European division and use the proceeds to pay down its outstanding obligations to the Senior Lenders.  Desa and the Senior Lenders ultimately agreed that Desa had until November 29, 2008 to consummate the sale of the European division.  *Id.* at ¶ 30.

16.     Desa was unable to close on a sale by the November 29, 2008 deadline.  *Id.*

-8-

**C.      The Senior Lenders, Not H.I.G., Swept Desa's Cash, Froze its Bank Accounts and Caused Desa to Engage in Drastic Restructuring Measures.**

17.      On December 5, 2008, Desa learned that the Senior Lenders had swept all of Desa's cash and frozen all of Desa's bank accounts without any warning or prior conversation with anyone at Desa.  Stokes D. Tr. at p. 114 l. 1 - 4.  Desa only learned of the cash sweep because vendors began complaining that its checks were not clearing.  *Id.* at p. 114 l. 5 - 8.

18.      Due to the Senior Lenders' position that they would agree to the limited use of cash collateral solely on a case by case basis, Desa was forced to engage in drastic restructuring measures in an attempt to meet its operational needs.  **Exhibit D** to Burns Dec. at ¶¶ 12-13.

**D.      At The Demand of the Senior Lenders, Not H.I.G. or the Board Members, Desa's Senior Managers Interviewed Restructuring Firms and Retained Craig Dean of AEG Partners, Who Took Control of Desa.**

19.      After sweeping Desa's cash, the Administrative Agent, not H.I.G., requested that AEG Partners, LLC ("AEG") submit a proposal to serve as Desa's restructuring firm.  Dean D. Tr. at p. 10 l. 8 - p. 11 l. 6, p. 27 l. 2 - 22.  During the week of December 11, 2008, Craig Dean, principal of AEG, made a pitch to Desa's senior managers for AEG to serve as Desa's restructuring firm.  *Id.* at p. 10 l. 18 - p. 11 l. 11.  H.I.G. was not involved in the pitch Mr. Dean made to Desa's senior managers.  *Id.* at p. 13 l. 9 - 14.

20.      On or about December 11, 2008, Desa's management, not H.I.G., informed Mr. Dean that Desa would retain AEG.  Dean D. Tr. at p. 12 l. 17 - p. 13 l. 24.  It was Desa's management, not H.I.G., who made the decision to retain AEG.  Stokes D. Tr.

CHI 59,613,518v1

at p. 61 l. 24 - p. 62 l. 1. Mr. Dean then transmitted an engagement letter to Desa's senior managers. Dean D. Tr. at p. 13 l. 9 - 24. Mr. Dean did not have any contact with anyone from H.I.G. during the pitch to Desa's senior managers or during the negotiation of the retention letter. *Id.*

21.     Mr. Dean went to work immediately on or about December 11, 2008. *Id.* at p. 14 l. 12 - 13. He and Kevin Willis, also of AEG, went to Desa's headquarters in Bowling Green, Kentucky and met with Desa's senior managers *Id.* at p. 14 l. 14 - p. 15 l. 1. Mr. Dean was responsible for communicating with the Senior Lenders concerning whether they would support Desa going forward. *Id.* at p. 47 l. 19 - p. 48 l. 20.

22.     Mr. Dean first communicated with Mr. Stokes after Desa had retained AEG, and on December 15, 2008, Desa's Board formally appointed Mr. Dean as Desa's Chief Restructuring Officer ("CRO"). *Id.* at p. 36 l. 8 - 18; Stokes D. Tr. at p. 60 l. 20 - p. 61 l. 11. As CRO and pursuant to his retention agreement, Mr. Dean was authorized to negotiate directly with the Senior Lenders and to make all of the day-to-day decisions for Desa, including decisions to hire, fire and layoff employees, without first seeking the approval of Desa's Board. Stokes D. Tr. at p. 122 l. 17 - p. 123 l. 3; Dean. D. Tr. at p. 44 l. 25 - p. 45 l. 9, p. 45 l. 17 - p. 46 l. 9, p. 47 l. 19 - p. 48 l. 20, p. 53 l. 24 - p. 54 l. 17.

23.     During the time period of December 11, 2008 until Desa filed its bankruptcy petition on December 29, 2008, Mr. Dean was running Desa on a day-to-day basis and was responsible for directing Desa's employees. Dean D. Tr. at p. 72 l. 8 - 13, 17 - 21. No one from H.I.G. was responsible for running Desa's day-to-day operations or directing Desa's employees during this time period. *Id.* at p. 71 l. 14 - 16, p. 72 l. 11 - 15.

CHI 59,613,518v1

24.     Although Mr. Dean periodically updated Mr. Stokes on his activities as CRO and developments at Desa, the purpose of these communications was to informally update the Board, through Mr. Stokes. Dean D. Tr. at p. 35 l. 18 - p. 36 l. 5; Stokes D. Tr. at p. 63 l. 16 - 20. Mr. Dean's communications with Mr. Stokes were primarily a "one-way street" in which Mr. Dean was merely providing information to Mr. Stokes. Dean D. Tr. at p. 37 l. 11 - 18.

25.     Mr. Dean testified that his interaction with Messrs. Mnaymneh, Tamer, Hanemann and Stokes was related solely to their roles as members of Desa's Board. *Id.* at p. 17 l. 6 - p. 18 l. 11. Mr. Dean did not consider Mr. Stokes to hold any management position with Desa during the time he was Desa's CRO and he never witnessed H.I.G. providing any management services to Desa during this time period. *Id.* at p. 38 l. 16 - 25, p. 44 l. 13 - 18.

### E.     Mr. Dean and Desa's Senior Managers, Not H.I.G. or the Board Members, Distributed the WARN Act Notices and Implemented the Layoffs.

26.     Mr. Dean directed Desa to implement a reduction in force on or shortly after December 11, 2008. *Id.* at p. 49 l. 19 - p. 50 l. 4, p. 53 l. 16 - p. 54 l. 11. Mr. Dean, Mr. Willis and Desa's senior managers were the only people who participated in this decision. *Id.* Mr. Dean did not have any discussions with any Desa Board member or H.I.G. employee before making the decision to implement these layoffs. *Id.* at p. 54 l. 12 - 17.

27.     On December 15, 2008, Mr. Dean informed Desa's Board that he had distributed WARN Act notices to employees in Kentucky. Stokes D. Tr. at p. 59 l. 13 - p. 60 l. 19. Only Mr. Dean, Mr. Willis, Charles Schaut (Desa's Vice President of Human Resources) and Desa's legal counsel participated in the drafting of the WARN Act notices.

-11-

Dean D. Tr. at p. 63 l. 5 - 12, p. 67 l. 2 - 6.  Mr. Dean did not discuss the drafting of WARN Act notices with any member of Desa's Board, and the Board never voted on the provision of WARN Act notices.  *Id.* at p. 67 l. 10 - 13; Stokes D. Tr. at p. 58 l. 24 - p. 59 l. 8, p. 60 l. 17 - 19, p. 127 l. 14 - 19.  Mr. Dean signed the notices provided to Plaintiffs.  **Exhibit G** to Burns Dec.

28.　　　There was a second round of layoffs at Desa on or about December 21, 2008.  Dean D. Tr. at p. 50 l. 2 - 4.  Along with Mr. Willis and Desa's senior managers, Mr. Dean made the decision to implement the layoffs.  *Id.* at p. 57 l. 10 - 15.  Although Mr. Dean informed the Board of the layoffs, he did not seek permission to implement the layoffs.  *See id.* at p. 70 l. 6 - 17; Stokes D. Tr. at p. 127 l. 20 - 23.  Mr. Dean also terminated employees' health benefits, a move that the Board ultimately ratified.  Stokes D. Tr. at p. 81 l. 1 - p. 82 l. 22.

29.　　　No H.I.G. employee played a role in the decision to distribute WARN Act notices or had independent knowledge of (i) the contents of any WARN Act notices that were distributed, (ii) the date(s) on which any WARN Act notices were distributed or (iii) which Desa employees received WARN Act notices.  Stokes Dec. at ¶ 11.

30.　　　No H.I.G. employee played a role in the decision to lay off Desa's employees or had independent knowledge of (i) which Desa employees were laid off, (ii) the date on which layoffs occurred, or (iii) the manner in which employees were informed of the layoffs.  *Id.* at ¶ 12.

31.　　　Mr. Dean was ultimately authorized to file a bankruptcy petition on behalf of Desa.  Dean D. Tr. at p. 73 l. 1 - 3.  Mr. Dean signed the bankruptcy petitions on behalf of the Desa entities, which were filed on December 29, 2008.  **Exhibit H** to Burns Dec.

# ARGUMENT

Based solely on allegations made "upon information and belief" that H.I.G. owned and controlled Desa and made the decision to lay off Desa's employees, Plaintiffs sued H.I.G. alleging that H.I.G. and Desa were a "single employer" and had violated the WARN Act. The sole question presently before the Court is *not* whether there was any violation of the WARN Act (an issue reserved for later proceedings), but rather whether Plaintiffs can meet their high burden of establishing that H.I.G. exerted such pervasive control over Desa and the decision to lay off Desa employees that H.I.G. and Desa should be treated as a "single employer" under the WARN Act.

The answer to this question is "no." In the context of the WARN Act's provisions, applicable federal regulations and precedential case law in the Third Circuit, the undisputed evidence demonstrates that H.I.G. never engaged in the requisite type of conduct that would permit this Court to find that it was Plaintiffs' employer. H.I.G. had no obligations under the WARN Act, and cannot not be held liable for Desa's alleged WARN Act violations.[2]

Indeed, the crucial actions taken after the December 2008 cash sweep by Desa's Senior Lenders were undertaken by Desa's senior managers, not by H.I.G. The Senior Lenders, not H.I.G., required Desa to retain a restructuring firm. Desa's senior managers, not H.I.G., interviewed restructuring firms and ultimately retained AEG and Craig Dean. Mr. Dean, not H.I.G., took control of Desa and negotiated with the Senior Lenders. Mr. Dean and Desa's senior managers, not H.I.G., drafted and distributed WARN Act notices to Desa's employees. Mr. Dean and Desa's senior managers, not H.I.G., decided to conduct layoffs. H.I.G. does not even possess independent knowledge of (i) the contents

---

[2] H.I.G. strongly denies that Desa actually violated the WARN Act.

of WARN Act notices that were distributed to Desa employees, (ii) the date(s) on which the WARN Act notices were distributed, (iii) the names of the employees who received WARN Act notices, (iv) the date(s) on which the layoffs were conducted or (v) the names of the employees that were laid off.

Under these circumstances, H.I.G., as a matter of law, was not Plaintiffs' employer and therefore Plaintiffs' claims against H.I.G. should be dismissed.

### A. The Rule 56 Summary Judgment Standard.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Bankruptcy Rules of Procedure, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Although in reviewing summary judgment motions courts are to "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Pa. Coal Ass'n v. Babbit*, 63 F.3d 231, 236 (3d Cir. 1995), "[t]he mere existence of some evidence in support of the nonmoving party...will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *White v. Brown*, No. CIV.A.08-606-ER, 2010 WL 1740717, *2 (D. Del. Apr. 28, 2010) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2205 (1986). If the Plaintiffs cannot make a sufficient showing on an essential element of their case for which they have the burden of proof, H.I.G. is entitled to judgment as a matter of law. *See id. citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

-14-

As the evidence demonstrates that H.I.G. never engaged in the type of conduct that would permit this Court to find that H.I.G. and Desa were the Plaintiffs' "single employer," the Plaintiffs are unable to make the required showing of an essential element of their case for which they have the burden of proof and H.I.G. is entitled to judgment as a matter of law.

## B.     The WARN Act Applies Only To "Employers."

The WARN Act requires generally that employers provide sixty (60) days' advance notice of any plant closing or mass layoff to their employees. "Employer" is defined as "any business enterprise that employs (A) 100 or more employees, excluding part-time employees, or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1)(A) and (B). A "plant closing" is defined as the permanent shut down of a single site of employment for 50 or more full-time employees. 20 C.F.R. § 639.3(b). A "mass layoff" is defined as a reduction in force (not the result of a plant closing) that results in an employment loss for at least one third of the full time employees at a single site of employment, with a minimum threshold of fifty (50) full time employee layoffs. 20 C.F.R. § 639.3(c).

An employer's parent company, lenders, shareholders, directors, advisors and consultants are not liable for the employer's violations of the WARN Act except in the rare circumstances where an employer and one or more companies may be considered a "single employer" for WARN Act purposes. The Third Circuit has explicitly cautioned courts not to create jurisprudence that "discourages loans in general or rescues of troubled enterprises in particular." *Pearson v. Component Tech. Corp.*, 247 F.3d 471,

-15-

502 (3rd Cir. 2001). It has similarly cautioned against finding liability merely because of the exercise of "ordinary powers of ownership, *i.e.*, to vote in directors and set general policies." *Id.* at 501. Akin to veil piercing, a finding that two entities function as a "single employer" is an exception to the sanctity of the corporate form and applicable only in exceptional circumstances.

The DOL has issued regulations concerning when two or more companies may be considered a "single employer" for WARN Act purposes:

> Under existing legal rules, independent contractors and subsidiaries which are wholly owned or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are **(i) common ownership, (ii) common directors and/or officers, (iii)** *de facto* **exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations**. (emphasis added)

29 C.F.R. § 639.3(a)(2).

Because it is undisputed that one or more of the Desa entities, not H.I.G., actually employed the Plaintiffs, H.I.G. cannot be held liable for Desa's alleged WARN Act violation unless the Plaintiffs *first* establish that H.I.G. exercised such pervasive control of Desa and the decision to lay off Desa's employees that they should be considered a single employer under the WARN Act. As set forth below, Plaintiffs fall far short of making this required showing.

CHI 59,613,518v1

C.   **H.I.G. And Desa Did Not Constitute Plaintiffs' "Single Employer" And Therefore H.I.G. Cannot Not Be Held Liable for Desa's Alleged WARN Act Violations.**

1.   Under The Five Factor Balancing Test Developed By the DOL and Applied by the Third Circuit, Plaintiffs Must Establish That H.I.G. And Desa Failed To Function At Arm's Length As Separate Entities.

In order to establish single employer status, the Plaintiffs carry the heavy burden of proving that H.I.G. became so "entangled with [Desa's] affairs so as to engender WARN Act liability."[3] *In re APA Transport. Corp.*, 541 F.3d 233, 244 (3d Cir. 2008) (internal quotations and citations omitted). Two companies are not a single employer if they "continued to function at arm's length as separate entities." *Id.* In fact, two companies must be "highly integrated with respect to ownership and operations" to be considered a single employer. *Pearson*, 247 F.3d at 505. "A parent will not be held liable solely because of its ownership of the subsidiary," and "a lender will not be liable solely because of the financial dependence that necessitated the loan in the first place." *Id.* at 496. Summary judgment is proper where no reasonable fact finder could determine that two companies constituted a single employer. *See id.* at 497.

In determining single employer status, the Third Circuit applies a balancing test using the five factors established by DOL regulations. The five factors are:

- *de facto* exercise of control;
- unity of personnel policies emanating from a common source;
- dependency of operations;
- common ownership; and
- common directors and/or officers.

---

[3] Although the Third Circuit has not addressed the issue of whether a private equity investor and its portfolio company may be a single employer, the Third Circuit has held that the single employer analysis for a creditor/borrower relationship is the same as for a parent/subsidiary relationship. For the purposes of this motion only, H.I.G. assumes that the Third Circuit would apply the DOL's five factor balancing test in the circumstances of this case.

-17-

20 C.F.R. § 639.3(a)(2).

2.  Under the DOL's Five Factor Test, H.I.G. And Desa Were Not A
    Single Employer.

As set forth below, the factors weigh heavily against the Plaintiffs' contention that Desa and H.I.G. functioned as a single employer. The uncontested facts are that H.I.G. and Desa operated as separate entities. Operational control of Desa rested with Desa's senior managers, not its board of directors. Day-to-day hiring and firing decisions were made by Desa management, and the decisions to distribute WARN Act notices and to lay off Desa's employees were made by Desa's Chief Restructuring Officer, with no involvement by the H.I.G. Board members. While certain H.I.G. representatives may have at times provided nonordinary course of business services in assisting in the divestiture of Desa's assets and restructuring of its debt, this conduct hardly warrants the imposition of single employer status on H.I.G.

i.  **H.I.G. Did Not Exercise *De Facto* Control of Desa.**

Although no one factor is necessarily controlling, *de facto* exercise of control is the most important factor in the balancing test. *See Pearson*, 247 F.3d at 504 ("if the *de facto* exercise of control was particularly striking…liability might be warranted even in the absence of the other factors"); *Voght v. Greenmarine Holdings, LLC, et al.*, 318 F. Supp. 2d 136, 143 (S.D.N.Y. 2004) ("the decision to effect a mass layoff is the single most important personnel policy"). Single employer status should be found only where one company "effects pervasive control over [the other company's] functioning." *Pearson*, 247 F.3d at 506. Additionally, the fact that one company declines to extend additional funds that it had no legal obligation to extend to another company does not establish *de facto* control. *Coppola v. Bear Stearns Co.*, 2005 WL 2648033, *12

-18-

(N.D.N.Y. Oct. 17, 2005).

The critical inquiry in the *de facto* control analysis is whether H.I.G. "was the decision-maker responsible for the employment practice giving rise to the litigation" -- meaning that the Plaintiffs must prove that H.I.G. made the specific decision to provide the WARN Act notices and to lay off Desa's employees. *Pearson*, 247 F.3d at 504. Plaintiffs cannot meet their burden based upon the following uncontested facts:

- The Senior Lenders, not H.I.G., swept Desa's cash, froze Desa's accounts and directed Desa to retain a restructuring firm.

- Desa's senior managers, not H.I.G., interviewed and retained AEG and Mr. Dean, who was given the authority to hire, fire and lay off Desa's employees without needing to seek permission from Desa's Board.

- Mr. Dean and Desa's senior managers, not H.I.G., made the decision to distribute WARN Act notices and to lay off Desa's employees.

- Mr. Dean did not consider Mr. Stokes to hold any management position in Desa during the period when Mr. Dean served as CRO, never witnessed H.I.G. provide any management services to Desa, and testified that his interactions with Messrs. Tamer, Mnaymneh, Hanemann and Stokes were limited to their roles as Board members.

- No employee of H.I.G. was involved the day-to-day hiring, supervising, disciplining or firing of Desa's employees.

- During the period of time when he served as CRO, Mr. Dean, not H.I.G., was running Desa's daily operations and supervising Desa's employees.

Given that H.I.G. played no role in the daily operations or management of Desa or in the decision to provide WARN Act notices and lay off Desa's employees (the "employment practices giving rise to the litigation"), this factor weighs overwhelmingly in H.I.G.'s favor and against single employer status.

CHI 59,613,518v1

## ii. H.I.G. and Desa Did Not Have Unified Personnel Policies.

It is undisputed that Desa, a manufacturing and products distribution company, and H.I.G., a private equity fund manager, have different personnel policies. Thus this prong weighs heavily in favor of H.I.G.

For the Plaintiffs to establish that H.I.G. and Desa shared a unity of personnel policies emanating from a common source, they must prove that H.I.G. and Desa "actually functioned as a single entity with regard to its relationship with employees." *Pearson*, 247 F.3d at 499. This factor is less important than the *de facto* control factor: "where a defendant does control daily personnel policies but is powerless when it comes to the decision to effect a mass layoff, the unity of daily personnel policies would carry comparatively little weight in a WARN liability analysis." *Voght*, 318 F. Supp. 2d at 143.

Unity of personnel policies does not exist where, among other things, (i) employees are hired and fired independently, (ii) employees report separately to supervisors at their respective companies, (iii) employees are paid from separate payrolls, (iv) the two companies have separate labor contracts, separate personnel and benefits recordkeeping, and (v) the two companies report tax obligations under separate tax identification numbers. *APA Transport. Corp.*, 541 F.3d at 245. Nor is this factor established merely because one company has the power to approve bonus programs and salaries of key executives of another company: "limited monitoring of compensation expenditures as part of a general loan agreement requiring oversight of [a company's] spending in a number of areas is not sufficient to demonstrate unity of personnel *policies*

-20-

emanating from a common source." *Pearson*. 247 F.3d at 499 (emphasis in original) (internal quotations omitted).

The undisputed facts establish that H.I.G. and Desa did not function as a single entity with respect to the relationship with their separate employees. Specifically,

- Desa's, LLC's CEO, not H.I.G., was responsible for setting Desa's personnel policies.

- H.I.G. and Desa did not share common: (i) employees, (ii) payroll systems, (iii) wage scales, (iv) employment policies or (v) employee reporting structures.

- No employee of H.I.G. was involved in creating, formulating and/or implementing Desa's payroll system, wage scale, employment policies and/or reporting structures, or the day-to-day hiring, supervising, disciplining or firing of Desa's employees.

- H.I.G. was not a signatory to Desa's collective bargaining agreement, played no role in the negotiation or administration of the agreement, and is not a signatory to any other collective bargaining agreement.

H.I.G. and Desa operated as separate companies, with separate employees, separate hiring, firing and termination of such employees, separate employment policies, and separate reporting structures. There is no evidence from which the Court could conclude that H.I.G. and Desa functioned as one in their relationship with their separate employees. This factor weighs heavily in H.I.G.'s favor.

### iii. There Was No Dependency of Operations Between H.I.G. and Desa.

Similarly, the undisputed facts are that there was no dependency of operations between H.I.G. and Desa. Hence this factor, too, weighs conclusively in favor of H.I.G.

In order to prove dependency of operations between H.I.G. and Desa, Plaintiffs must establish "the existence of agreements [between H.I.G. and Desa] such as the sharing of administrative or purchasing services, interchange of employees or equipment,

and comingled finances." *Pearson*, 247 F.3d at 500. "The mere fact that the subsidiary's chain-of-command ultimately rests in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations." *Id.* at 501. The Plaintiffs may not simply point to H.I.G.'s alleged "exercise of its ordinary powers of ownership, *i.e.*, to vote in directors and set general policies." *Id.* Additionally, the fact that one company provided loans to another company in order to keep the company afloat does not constitute dependency of operations. *Id.* at 503; *Cuppola*, 2005 WL 2648033 at * 12. Finally, "[t]here is no stronger evidence of [lack of dependency of operations] than that [one company] continued to operate without incident after [the other company] folded." *APA Transport.*, 541 F.3d at 245.

The undisputed facts prove that there was no dependency of operations between H.I.G. and Desa. In particular,

- There were no arrangements or practices between Desa and H.I.G. for the sharing of administrative purchasing services or common facilities, interchange of employees, equipment or other materials, or comingling of finances.

- H.I.G. and Desa owned separate bank accounts and Desa reimbursed H.I.G. for certain expenses incurred by H.I.G. personnel (*e.g.*, meal and travel expenses).

- H.I.G. and Desa had separate tax identification numbers and filed separate tax returns.

- Desa and H.I.G. used different firms/people for auditing, accounting and benefits administration purposes.

- H.I.G.'s existence and operations have not been affected by the Desa bankruptcy.

H.I.G. and Desa engaged in *none* of the conduct that is required in order to establish dependency of operations. Thus this factor weighs heavily in H.I.G.'s favor.

-22-

iv.    **Even if Plaintiffs Could Establish Common Ownership and Common Officers/Directors, Such a Showing is Insufficient to Establish Single Employer Status.**

While Plaintiffs may be able to establish common officers/directors, it is undisputed that H.I.G. did not own directly any of the Desa entities. Even if Plaintiffs could establish both common officers/directors and common ownership, these factors are generally considered to be the least important of the five factors. "[O]wnership – and even ownership coupled with common management – is not a sufficient basis for [WARN Act] liability." *Pearson*, 247 F.3d at 494. As the Supreme Court noted in *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876 (1998) (a case not concerning the WARN Act), "[i]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary...[s]ince Courts generally presume that directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability...that dual officers and directors made policy decisions and supervised activities at the subsidiary." 524 U.S. at 69-60.

Indeed, the Third Circuit's seminal decision in *Pearson* and its subsequent decision in *APA Transport* mandate the dismissal of Plaintiffs' claim against H.I.G. In *Pearson*, former employees of Component Technology Corporation ("Component") sued General Electric Capital Corporation ("GECC"), Component's lender, alleging that GECC exercised such control over Component that GECC and Component should be considered a single employer.

Although there was evidence that (i) Component sought approval from GECC for its bonus plan and for salaries in excess of $100,000, (ii) GECC forced Component's CEO to resign, (iii) GECC monitored the hiring of Component's CEO and other high level employees, (iv) GECC demanded that Component hire a consultant that others

-23-

understood to be a GECC representative, and (v) GECC's decision to call its loans to Component caused Component's decision to conduct layoffs, the Third Circuit affirmed the District Court's summary judgment order dismissing plaintiffs' WARN Act claims. The Third Circuit affirmed the dismissal because: (i) Component and GECC did not share or even coordinate their labor polices; (ii) Component had its own personnel managers who never received direction from GECC; (iii) there was no evidence of sharing of administrative purchasing services, interchange of employees or equipment or comingling of finances; (iv) the loans between Component and GECC were arm's length transactions; (v) Component independently sought financing that would allow it to continue to operate and independently sought legal advice; and (vi) there were no common directors/officers.

The Third Circuit's affirmation of summary judgment in GECC's favor is particularly striking given that the evidence suggested that GECC's decision was not merely to "refuse to loan additional working capital, but instead to liquidate the company - thus forcing [it] to close its doors." *Pearson*, 2477 F.3d at 504 (internal quotations and citations omitted). While the Court described the distinction between a decision to call a loan and a decision to shut down a company a "fine one," it nevertheless affirmed summary judgment and cautioned that courts "must be scrupulous in...efforts to distinguish between situations in which a parent/lender has ultimately assumed responsibility for the continuing viability of a company (thus incurring liability for WARN Act violations), *and situations in which the borrower has retained the ultimate responsibility for keeping the company active.*" *Id.* (emphasis added). In this case, there

is no dispute that Desa, not H.I.G., always retained the ultimate responsibility for keeping the company afloat.

In *APA Transport*, APA Transport provided WARN Act notices to employees and nine days later it closed its terminal and laid off its employees. The Third Circuit affirmed the District Court's summary judgment order dismissing plaintiffs' WARN Act claims against an affiliated entity, APA Truck Leasing, because no reasonable fact finder could conclude that APA Transport and APA Truck Leasing constituted a single employer. It was undisputed that the two companies (i) had common ownership and common officers/directors, (ii) were parties to "informal" intercompany loans, (iii) shared certain administrative functions and benefit plans, and (iv) individuals at one company could bid for open positions at the other company.

The Third Circuit affirmed the holding that the two companies were not a single employer because (i) each company had independent wage rates, pay scales, salaries, payrolls and personnel policies; (ii) each company hired and fired employees separately, maintained personnel files separately and had independent reporting structures; (iii) each company reported tax obligations under separate tax identification numbers; (iv) each company had separate labor contracts; (v) the loans between the companies, even if informal, were arm's length transactions; (vi) APA Truck Leasing did not make the decision to close the terminal and lay off APA Transport's employees; and (vii) APA Truck Leasing continued to operate after APA Transport folded. The Third Circuit agreed that the three most important factors (*de facto* control, unity of personnel policies and dependency of operations) favored the defendant and that "no reasonable juror could find that APA Transport and APA Truck Leasing functioned as a 'single employer.'"

-25-

*APA Transport.*, 541 F.3d at 245. Likewise, in this case the first three factors conclusively support H.I.G.'s position that no reasonable fact finder could find that it and Desa functioned as a single employer.

Given the Third Circuit's express caution against expanding WARN Act liability when two companies are not highly entangled with each other's affairs, its affirmation of summary judgment orders dismissing WARN Act claims in circumstances that presented far closer a question than presented by the facts of this case, and the uncontested evidence that at all times Desa functioned separately from H.I.G. and made the decision to lay off its employees without any involvement by H.I.G., as a matter of law H.I.G. and Desa were not Plaintiffs' single employer and Plaintiff's claims against H.I.G. should be dismissed.

[SIGNATURE ON NEXT PAGE]

*CHI 59,613,518v1*

# CONCLUSION

Because there is no evidence from which the Court could conclude that H.I.G. and Desa were highly integrated with respect to ownership and operations, that they failed to exist or interact at arm's length, or that H.I.G. played a role in the employment practice giving rise to this litigation, summary judgment should enter in H.I.G.'s favor on the single employer issue.

H.I.G. respectfully requests that the Court dismiss with prejudice the Plaintiffs' claim against H.I.G., enter the Proposed Order attached as **Exhibit A** to H.I.G.'s Motion for Summary Judgment on the Single Employer Issue, and award H.I.G. all other relief it deems just and proper.

Respectfully Submitted,

Date: May 10, 2010

Dennis A. Meloro (#4435)
1007 North Orange Street, Ste. 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
melorod@gtlaw.com

Joseph P. Davis III (BBO# 551111)
Jeffrey M. Burns (BBO# 661448)
One International Place
Boston, MA 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
davisjo@gtlaw.com
burnsj@gtlaw.com
Admitted *Pro Hac Vice*

*Counsel for H.I.G. Capital, LLC*

CHI 59,613,518v1