**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DHP HOLDINGS II CORP., et al., | ) | Case No. 08-13422(MFW) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| JOHN MANNING and TONY QUESENBERRY, | ) | |
| on their own behalf and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50023(MFW) |
| | ) | |
| DHP HOLDINGS II CORP. a/k/a, | ) | |
| DESA (CAYMAN) HOLDING, LLC, DESA | ) | |
| (CAYMAN) II HOLDING, LLC, DESA, LLC, | ) | |
| DESA HEATING, LLC, DESA SPECIALTY, | ) | |
| LLC, DESA FMI, LLC, DESA IP, LLC, | ) | |
| DESA, LLC, and HIG CAPITAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION[1]**

The issue presented by the summary judgment motion before the Court is whether the defendant, H.I.G. Capital, LLC ("HIG"), is liable for the Debtors' alleged violations of the WARN Act[2] because HIG and the Debtors constituted a "single employer." Although HIG and the Debtors had common ownership, directors, and

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] The WARN Act is the Worker Adjustment and Retraining Notification Act. 29 U.S.C. § 2101 et seq.

officers, the Court finds that the Debtors and HIG were not a "single employer" because HIG did not exercise de facto control over the Debtors' termination of employees and did not share personnel policies or operations with the Debtors.

I. BACKGROUND

DHP Holdings II Corp. ("Holdings") and its direct and indirect subsidiaries (collectively the "Debtors") were leading manufacturers, distributors, and marketers of vent-free heating appliances, outdoor heaters, lawn and garden electrical products, and consumer fastening systems in the United States. HIG is an indirect owner of Holdings.[3]

The Debtors were parties to a credit agreement dated December 6, 2004 (the "Senior Credit Agreement") with certain financial institutions (the "Senior Lenders"). HIG was neither a party to this agreement nor a guarantor of the Debtors' obligations under this agreement.

After a series of defaults by the Debtors in March 2008, the Senior Lenders insisted that the Debtors sell their European division and use the proceeds to reduce their outstanding obligations to the Senior Lenders. After the Debtors were unable to close on a sale of the European Division, the Senior Lenders

---

[3] HIG owns a seventy percent (70%) stake in DHP Acquisition Corp., which owns all of Debtor Holdings, which owns all of Debtor Desa LLC, the parent of all the other Debtors.

swept all of Debtors' cash and froze their bank accounts on December 5, 2008.

At that time, the Senior Lenders also insisted that the Debtors hire Craig Dean of AEG Partners, LLC ("AEG") as Chief Restructuring Officer ("CRO"). After the retention of Dean, several rounds of layoffs occurred, including the layoffs affecting the Plaintiffs on December 18, 2008.

Approximately two weeks later, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Plaintiffs filed this class action complaint against HIG and the Debtors alleging violations of the WARN Act. The Plaintiffs assert that the Debtors and HIG constitute a "single employer" under the WARN Act, entitling them to collect damages from both HIG and the Debtors.

The parties have agreed to suspend consideration of issues relating to class certification, liability, and damages, pending resolution of the "single employer" issue. HIG filed a Motion for summary judgment on the issue. Briefing on the Motion is complete, and the matter is ripe for decision.

II. <u>JURISDICTION</u>

This Court has jurisdiction over the adversary, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B) & (O).

III. DISCUSSION

    A.    Standards for Summary Judgment

In considering a motion for summary judgment under Rule 56,[4] the court must view the inferences from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981). If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, then the court shall enter judgment in the movant's favor. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007). A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

Once the moving party has established a prima facie case in its favor, the non-moving party must go beyond the pleadings and

---

[4] Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings. In addition, Rule 9014(c) makes Rule 7056 applicable to contested matters.

4

point to specific facts showing more than a scintilla of evidence that there is a genuine issue of fact for trial. See, e.g., Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999). Therefore, if the court determines that the non-moving party has presented no genuine issue of fact, summary judgment may be granted. See Matsushita, 475 U.S. at 587.

B. "Single Employer" Status under the WARN Act

Under the WARN Act, employers[5] must provide employees with written notice of a mass layoff at least sixty days prior to the layoff. 29 U.S.C. § 2102(a). The Third Circuit has adopted the test set forth in regulations issued by the Department of Labor under the WARN Act to determine when an employer and its parent or lender may be considered a "single employer" (and therefore jointly liable) for WARN Act violations. 20 C.F.R. § 639.3(a)(2); Pearson v. Component Tech. Corp., 247 F.3d 471, 478 (3d Cir. 2001).

Under the Department of Labor regulations, relevant factors include: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of

---

[5] An employer is defined in the WARN Act as an enterprise that has one hundred or more employees that work collectively at least four thousand hours per week. 29 U.S.C. §§ 2101(a)(1)(A)-(B).

5

personnel policies emanating from common source, and (v) the dependency of operations. 20 C.F.R. § 639.3(a)(2).

While these factors are indicative of single employer status, this is a not an exhaustive list. <u>Pearson</u>, 247 F.3d at 478. Courts may also consider circumstances that tend to "demonstrate a lack of arm's-length relationship between the companies." <u>Id.</u> at 491. <u>See also</u> <u>In re APA Transp. Corp.</u>, 541 F.3d 233, 245 (3d Cir. 2008).

    1.  <u>Common ownership, directors and/or officers</u>

The Plaintiffs argue that the first two factors are clearly present and thus weigh significantly in their favor. It is undisputed that HIG owns a seventy percent (70%) stake in DHP Acquisition Corp., which owns all of Debtor Holdings, which owns all of Debtor Desa LLC, the parent of all the other Debtors.

In addition, the Plaintiffs note that HIG associates held all of the director positions in Holdings and held four of the five director positions in the other Debtors. Further, HIG associates held four of the five officer positions at Holdings and two of the four officer positions at the other Debtors. The Plaintiffs assert that this management and ownership structure is sufficient to satisfy the first two factors.

HIG does not contest these facts, but simply argues that these two factors alone are not sufficient to establish WARN Act liability. <u>Pearson</u>, 247 F.3d at 494 ("ownership - and even

6

ownership coupled with common management – is not a sufficient basis for [WARN Act] liability").

The Court finds that the Plaintiffs have satisfied the first two factors.

### 2. De facto exercise of control

According to HIG the critical inquiry in the de facto exercise of control analysis is whether HIG "was the decision maker responsible for the employment practice giving rise to the litigation." Pearson, 247 F.3d at 504. HIG asserts that it was the Senior Lenders, the Debtors' senior management, and the Debtors' CRO Dean, not HIG, that were responsible for the decisions to terminate the employees without giving the WARN Act notices.

The Plaintiffs argue that it was the directors (controlled by HIG) who decided to file for bankruptcy and close certain facilities, thereby resulting in the alleged WARN Act violations. With respect to the specific firings, however, the Plaintiffs do not dispute that they were done by Dean, but assert that Dean was compelled to do so by the HIG directors. The Plaintiffs opine that Dean, a professional "restructuring agent," would not come into an established company, with little experience in the industry, and take such actions without receiving orders from HIG.

Although there is no direct evidence of this, the Plaintiffs contend that this can be inferred from the fact that HIG had already planned to have the Debtors commence facility closings and terminate employees. The Plaintiffs cite emails and discussions among the HIG directors prior to the terminations, regarding the Debtors' need for cost-cutting, the submission of budgets, and a liquidation analysis.

HIG does not dispute that it prepared cost-cutting plans for the Debtors. In fact, Dean's first day declaration states that over the year proceeding the bankruptcy filing, "the Debtors had begun the implementation of a significant restructuring plan to substantially improve their operating and income performance." (Burns Decl. at Ex. D, 4.) HIG asserts, however, that the Debtors' restructuring efforts were thwarted by the Senior Lenders who rejected the proposed budgets (which required additional funding) and decided to sweep and freeze the Debtors' bank accounts. According to HIG, once the Senior Lenders froze the accounts and Dean was appointed CRO, the decision regarding plant closings and terminations was left to Dean's discretion.

The only communications Dean had with individuals tied to HIG were discussions with Stokes, one of the HIG directors.[6] (Burns Decl. at Ex. A, 36-37.) Both Dean and Stokes testified

---

[6] On some occasions Brian McMullin, another HIG employee, was also on the call. (Burns Decl. At Ex. A, 36-37.)

that in those conversations, Dean merely updated Stokes (as the point person for the Board) on the actions Dean was taking. (Burns Decl. at Ex. A, 36-37; Ex. B, 123.)

They further testified that Dean conducted the terminations without seeking any prior authority from the Debtors' directors or any HIG employee. There is no evidence in the record that any HIG employee ever had any knowledge of which employees were being terminated, when the terminations were to occur, or the manner in which the employees were informed of the terminations.

The uncontroverted testimony establishes that it was Dean, acting as the Debtors' CRO, who made the decision to close the facilities and terminate the employees. There is no evidence that HIG controlled that decision. The Court finds the fact that both Dean and the HIG directors reached the same conclusion regarding cost-cuts and facility closings is insufficient to support the conclusion that HIG directed the termination of the employees, especially in light of the testimony to the contrary. Therefore, the Court concludes that the Plaintiffs have failed to present sufficient evidence to show that HIG exercised de facto control over the Debtors and the termination of the Debtors' employees.

Further, the fact that the Debtors' boards (including HIG directors) approved the bankruptcy filing or facility closings, is insufficient to establish that HIG ordered the terminations.

9

See, e.g., Azzata v. American Bedding Indus., Inc. (In re Consolidated Bedding, Inc.), 432 B.R. 115 (Bankr. D. Del. 2010) (dismissing WARN Act claims against a lender/primary equity holder even though the lender/primary equity holder had employees on the Debtors' board of directors that were involved in the decisions to file for bankruptcy and close facilities).

The Court finds that the Plaintiffs have failed to demonstrate that HIG was the decision maker responsible for the terminations and consequently, have failed to prove that HIG exercised de facto control over the Debtors' decision to terminate the employees.

### 3. Unity of personnel policies

HIG argues, and the Plaintiffs do not dispute, that the Debtors and HIG did not have unified personnel policies emanating from a common source. This factor requires a showing that HIG and the Debtors "actually functioned as a single entity with regard to its relationship with employees." Pearson, 247 F.3d at 499. In evaluating this factor the Court must consider whether "the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." APA Transp., 541 F.3d at 245.

HIG argues that based on the evidence presented this factor does not favor the Plaintiff. First, the Debtors negotiated their own labor contracts separately, as evidenced by the CRO's

10

negotiation of the Debtors' employment contracts and bonus structures. (Burns Decl. at Ex. A.) Second, the Debtors had their own human resources officer and, therefore, the two entities did not have a common supervisor to whom employees reported. (Id.) Third, there is no evidence that HIG had any control over the compensation structure of the Debtors' employees. (Id.) Finally, HIG and the Debtors had separate tax identification numbers and filed separate tax returns. (Id. at Ex. H.) The Plaintiffs failed to present any evidence to the contrary.

Based on the record presented, the Court finds that HIG and the Debtors did not share a unified personnel policy emanating from a common source. Therefore, this factor favors HIG.

### 4. Dependency of operations

HIG argues, and the Plaintiffs do not dispute, that the evidence presented fails to show a dependency of operations. Such a finding would require the existence of agreements between HIG and the Debtors, such as the sharing of "administrative or purchasing services, interchange of employees or equipment, and commingled finances." Pearson, 247 F.3d at 500 (citations omitted).

HIG was an investment company without any operations other than managing its investments. Pearson, 247 F.3d at 501 (stating that "dependency of operations cannot be established by the

11

parent corporation's exercise of its ordinary powers of ownership, i.e., to vote in directors and set general policies."). HIG notes that its continued operations after the Debtors shut down specifically shows a lack of dependency of operations. APA Transp., 541 F.3d at 245 (finding that the lender/parent and the borrower/subsidy were not "dependent" upon one another to continue operations when the lender/parent continued to operate without incident after the borrower/subsidy folded). Further, HIG notes that HIG and the Debtors had separate bank accounts, tax numbers, tax returns, and outside and inside firms/personnel for auditing, accounting, and benefits administration purposes.

The Court finds that there was no dependency of operations between HIG and the Debtors. This factor favors HIG.

5. Summary

After an evaluation of the five factors the Court finds that only the first two factors favor the Plaintiff. The satisfaction of the first two factors alone, however, is not sufficient to establish WARN Act liability. Pearson, 247 F.3d at 494 ("[O]wnership - and even ownership coupled with common management - is not a sufficient basis for [WARN Act] liability"); Coppola v. Bear Stearns & Co., Inc., 499 F.3d 144, 150 (2d Cir. 2007) (finding that the Department of Labor factors other than the de facto control factor are not really compelling). Without any of

the remaining three factors, the Court finds that the Plaintiffs have failed to show that HIG and the Debtors should be considered a "single employer" under the WARN Act.

III. CONCLUSION

For the reasons set forth above, the Court will grant HIG's Motion for Summary Judgment.

An appropriate Order is attached.

BY THE COURT:

Dated: April 26, 2010

Mary F. Walrath
United States Bankruptcy Judge